UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATOYA ZAMORA,                              Case No. 09-13260
Parent of Jasmine Zamora,

                                            Gerald E. Rosen
              Plaintiff,                    United States District Judge
vs.

                                            Michael Hluchaniuk
COMMISSIONER OF                             United States Magistrate Judge
SOCIAL SECURITY,

              Defendant.
_____/

# REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On August 19, 2010, plaintiff, mother of a minor child, filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Gerald E. Rosen referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for supplemental security income.  (Dkt. 4).  This matter is currently before the

Court on cross-motions for summary judgment.  (Dkt. 15, 16).

B.    Administrative Proceedings

Plaintiff filed the instant claims on January 5, 2007, on behalf of her minor child, the claimant, alleging disability beginning on November 1, 2006. (Dkt. 9, Tr. at 53). The claim was initially disapproved by the Commissioner on April 2, 2007. (Dkt. 9, Tr. at 48-51). Plaintiff requested a hearing and on March 17, 2000, plaintiff and the claimant, represented by a non-attorney before Administrative Law Judge (ALJ) Jerome B. Blum, who considered the case *de novo*. In a decision by the Appeals Council dated May 26, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 9, Tr. at 4-17). Plaintiff requested a review of this decision on May 22, 2009. (Dkt. 9, Tr. at 18-19). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 13, 2009, denied plaintiff's request for review. (Dkt. 9, Tr. at 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that the claimant is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

The claimant was eight years of age at the time of the most recent administrative hearing.  (Dkt. 9, Tr. at 53).  At Step I, the ALJ found that the claimant did not engage in substantial gainful activity at any time relevant to the ALJ's decision.  (Dkt. 9, Tr. at 10).  At Step II, the ALJ found that the claimant had mood and behavior disorders, which he found to be impairments that caused more than minimal functional limitations.  (Dkt. 9, Tr. 10).  At Step III, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled the Listings or that functionally equaled the Listings. (Dkt. 9, Tr. 10).  In denying plaintiff's claims, defendant Commissioner considered mood and behavior impairments as possible bases of disability.  (Dkt. 9, Tr. at 10). After considering the evidence of record, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the ALJ found that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms were not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings.  Claimant's mother argues that the claimant does not get along well with others and has tried to set the family home on fire.  The ALJ concluded, however

that the evidence of record failed to show that the claimant's impairments caused her have marked limitations in any domain.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

        If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Legal Standards - Eligibility For SSI Childhood Disability Benefits</u>

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(I).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

1.    A child will be found "not disabled" if he engages in substantial gainful activity.

2.    A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.

3.    A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment. 20 C.F.R. § 416.926a(a). The SSA will consider how a child functions in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[1] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d).

_____

[1] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

C.     Analysis and Conclusions

Plaintiff does not appear to object to the ALJ's conclusion that the
claimant's impairments did not meet the Listings.  Rather, the appeal seems to be
related to the ALJ's assessment of whether the claimant's impairments functionally
equaled an impairment in the Listings, based on an assessment of the six domains
found in 20 C.F.R. § 416.926a(a).  The claimant has to show that the ALJ's
decision that she suffered from less than marked limitations in two of the six
domains is unsupported by substantial evidence or that the ALJ's decision that
plaintiff's limitations in one of the six domains was not extreme was unsupported
by the substantial evidence.

1.     Acquiring and Using Information

This domain considers how well a child is able to acquire or learn
information, and how well a child uses the information she has learned.  20 C.F.R.
§ 416.926a(g).  The regulations provide that a school-age child (i.e., a child age 6
to the attainment of age 12) without an impairment should be able to learn to read,
write, and do math, and discuss history and science.  The child will need to use
these skills in academic situations to demonstrate what she has learned by reading
about various subjects and producing oral and written projects, solving
mathematical problems, taking achievement tests, doing group work, and entering
into class discussions. The child will also need to use these skills in daily living

situations at home and in the community (e.g., reading street signs, telling time, and making change). The child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others. 20 C.F.R. § 416.926a(g)(2)(iv). Social Security regulation 20 C.F.R. § 416.926a(g)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences, and has difficulty explaining what she means.

According to the ALJ, the claimant has less than marked limitation in acquiring and using information. He noted that the claimant's mother reported that the claimant had a 5-minute attention span and that she could not take a simple phone message but she agreed that the claimant was able to use 4-5 words to

complete sentences, and while she would mispronounce her words, she was able to talk about the future. During a March 8, 2007 consultative exam, the claimant's mother stated that the claimant had oppositional behaviors. However, the ALJ noted that she was not in special education classes, had never failed a grade level and was able to count to 10 and to 100 by 10's. The claimant's AIS testing scores showed Full Scale IQ of 78 and Performance IQ of 72, both of which were considered borderline, and Verbal IQ of 88, which was low average. The ALJ also referred to the observations from the local social security office indicated that the claimant appeared to be a "very intelligent little girl." Her January 2009 report card revealed grades for reading, English, spelling and science of F's and in social studies and math she received D's. Her only B was in physical education and a C for handwriting. The ALJ acknowledged that this report showed that plaintiff had some difficulties in the domain, it was also important to note that the claimant had been absent from class frequently. Overall, the ALJ found that the reports in the file fail to show that she has more consistent difficulties in this area, which would warrant a more severe finding than "less than marked."

Inexplicably, the ALJ concluded that the claimant was not receiving special education. While on January 19, 2007, the mother reported no special education (Tr. 67), in June, 2007 claimant was approved for special education after a May, 2007 evaluation. (Tr. 111-112). In March, 2008, she was found to be performing

far below her grade level in all areas except science. (Tr. 113). A May, 2008 evaluation noted that she was in special education. (Tr. 134). The ALJ also indicated that the claimant had never repeated a grade level. While her mother reported at the hearing that she was repeating the third grade, there does not appear to any materials in the record to support that fact. There is evidence that repeating second grade was recommended at one point and the claimant's mother noted that second grade had been repeated on a form dated April 19, 2007. (Tr. 118). However, a form dated March 19, 2008 indicates that the claimant never repeated any grades. (Tr. 113). The ALJ's failure to note that plaintiff was receiving special education in 2008 may be a mere oversight because he refers to many of the records in which such references are made throughout his decision. Moreover, the March 8, 2007 consultative examination to which the ALJ referred in noting that the claimant was not in special education does, in fact, make that statement. There is not sufficient evidence in the record to support any claim that the claimant's impairment in this domain was extreme and, even if an assumption could be made that the claimant's impairment was marked in this area, as discussed below, the ALJ's decisions regarding the five other domains are supported by the substantial evidence and there is no basis to revisit the decision.

## 2. Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h). The regulations provide that a school-age child without an impairment should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in her work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by herself, and complete family chores. The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv). Social Security regulation 20 C.F.R. § 416.926a(h)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, according to

the ALJ, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (I) easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) easily frustrated and gives up on tasks, including ones she is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

The ALJ found that the claimant had less than marked limitation in attending and completing tasks. During the initial application at the Social Security Administration office, the representative noted that the claimant was very active and would not sit still. The March 8, 2007 consultative examination revealed that the claimant had good attention span. The records show a history of making careless mistakes, but no other serious problems were noted in the schoolteacher's questionnaire. (Tr. 151). A school report from May 1, 2007 related that the claimant had some difficulty with staying on task but it was not highlighted as a critical issue that plagued her daily, which leaves the impression that this problem was not significant. (Tr. 70). The ALJ concluded that, while the evidence showed some difficulties in this domain, the claimant did not have any serious problems in this area, but because of the mother's allegations, the benefit of the doubt was

given and a finding of "less than marked" ascribed by the ALJ. In the view of the undersigned, the ALJ correctly captured the severity of claimant's impairments in this domain and his conclusion that her impairment was less than marked is supported by the substantial evidence.

### 3. Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(I). The regulations provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv). Social Security regulation 20 C.F.R. § 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples

do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

The ALJ concluded that the claimant had less than marked limitation in interacting and relating with others.  The claimant's mother argues that there were some difficulties in this domain; she noted in a January 19, 2007 report that the claimant will on some days get along with her brother and cousin while on other days she does not.  The ALJ concluded that this did not seem to be something that was out of the ordinary.  The mother also reported that the claimant would "ignore her teachers."  Her mother also reported that the claimant had set a serious house fire and cut her own hair.  According to the ALJ, the claimant's mother contradicted her allegation of a house fire at the consultative exam from March 8, 2007 when she stated that the claimant "tried to set the house on fire."  The ALJ found that the description of the claimant's inability to get along with others or in a

socially appropriate way seemed severe but stood in contrast to the school reports. For example, during the March 2007 consultative exam, the physician stated that the claimant was friendly and cooperative with the entire clinical staff. A February 9, 2007 school report shows that the claimant had only "slight" problems in 5/13 areas regarding "interacting and relating to others." (Tr. 71). The school report also showed that the claimant interacted well with her peers and had a good rapport with her teachers. An April 2008 school report also highlighted the fact that the claimant was "friendly" and loved to draw. The ALJ found that the school reports were more objective and probative and gave them significant weight. Therefore, a finding of "less than marked" was found justified by the ALJ. While the undersigned is not persuaded that there was any real inconsistency regarding the claimant's involvement in setting or attempting to set a house fire, the undersigned concludes that the ALJ's findings in this domain are supported by the substantial evidence in the record.

4.     Moving About and Manipulating Objects

This domain considers how well a child is able to move her body from one place to another and how a child moves and manipulates objects. These are called gross and fine motor skills. 20 C.F.R. § 416.926a(j). The regulations provide that a school-age child without an impairment should have gross motor skills that let her move at an efficient pace at school, home, and throughout the neighborhood.

Report and Recommendation
Cross-Motions for Summary Judgment
*Zamora v. Comm'r*; Case No. 09-13260

The child's increasing strength and coordination should expand her ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching, and hitting balls in informal play or organized sports. The child's development of fine motor skills should enable her to do things like use many kitchen and household tools independently, use scissors, and write. 20 C.F.R. § 416.926a(j)(2)(iv). Social Security regulation 20 C.F.R. § 416.926a(j)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in moving about and manipulating objects are: (i) difficulty with motor activities (e.g., stumbling, unintentionally dropping things) because of muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia); (ii) difficulty with balance or climbing up and down stairs, or jerky or disorganized locomotion; (iii) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); (iv) difficulty with sequencing hand or finger movements; (v) difficulty with fine motor movement (e.g., gripping or grasping objects); or (vi) poor eye-hand coordination when using a pencil or scissors.

The ALJ found that the claimant has no limitation in moving about and manipulating objects. The January 5, 2007 field office report stated that the claimant had no physical difficulties during the application process. The March 2007 consultative examination noted that the claimant had no psychomotor difficulties and no symptoms of ADHD demonstrated during the exam. There is a mention by the school gym teacher that the claimant is uncoordinated (Tr. 72) but that failed to convince the ALJ that there is any type of difficulty in this domain, therefore a finding of "none" was deemed justified. The undersigned concludes that the ALJ's decision is supported by the substantial evidence. Even considering the gym teacher's conclusion that the claimant had "obvious problems" with (1) demonstrating strength, coordination, and dexterity in activities or tasks, (2) moving and manipulating things, and (3) managing the pace of physical activities or tasks, this is insufficient to overturn the ALJ's conclusions and does not support a marked or extreme limitation.

### 5.    Caring for Yourself

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and whether the child takes care of her own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The regulations

provide that a school-age child without an impairment should be independent in most day-to-day activities (e.g., dressing and bathing), although she may still need to be reminded sometimes to do these routinely. The child should begin to recognize that she is competent in doing some activities but has difficulty doing others. The child should be able to identify those circumstances when she feels good about herself and when she feels bad. The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. The child should also begin to demonstrate consistent control over her behavior, and be able to avoid behaviors that are unsafe or otherwise not good for her. At this age, the child should begin imitating more of the behavior of adults she knows. 20 C.F.R. § 416.926a(k)(2)(iv). Social Security regulation 20 C.F.R. § 416.926a(k)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth; (ii) often uses self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); (iii) does not dress or bathe age-appropriately; (iv) engages in self-injurious behavior (e.g., suicidal thoughts or

actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests; or (vi) has disturbances in eating or sleeping patterns.

The ALJ found that the claimant had less than marked limitation in the ability to care for herself. The March 2007 examination showed that the claimant prepares herself for school and on returning from school, changed her clothing, did her homework, watched television and played. In an activities questionnaire, the claimant's mother stated that the claimant would do her chores, which involved wiping tables and picking up after herself. Her mother wrote that the claimant was able to care for her personal needs and had no difficulties doing these things. A finding of less than marked was warranted in this domain, according to the ALJ. While the claimant's mother also noted, however, that she needed 99% supervision and never completes her chores, this is not sufficient to overturn the ALJ's findings, which the undersigned concludes are supported by substantial evidence. (Tr. 66, 117).

6.      Health and Physical Well-Being

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.929a(i). Social Security regulation

20 C.F.R. § 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) exacerbations from an impairment(s) that interfere with physical functioning; or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

The ALJ found that the claimant had no limitation in health and physical well-being. A school report indicated that at times, the claimant would burst into tears and will report feeling sad but no additional information was given by the claimant on this issue. During the March 2007 examination, the physician found that she had no abnormal perceptions, her concentration was good and she had an appropriate affect. However, her mother reported that she had an angry mood,

fights, and was cruel to the family cat. Her appetite and sleep were reported as being normal. The lack of any medical difficulties left the ALJ the impression that the claimant did not have any serious issues in this domain and a finding of "none" is justified. Contrary to the ALJ's conclusion, there were reports in the record that the claimant had difficulty sleeping and was on medication to help her sleep. However, the undersigned concludes that this evidence is not sufficient to warrant overturning the ALJ's findings in this domain and this evidence is not sufficient to support a finding of a marked or extreme limitation.

      7.     Conclusion

Accordingly, the ALJ concluded that the claimant did not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. The claimant was, therefore, according to the ALJ, not disabled, as defined in the Social Security Act, since January 5, 2007, the date the application was filed 20 C.F.R. § 416.924(a). The claimant failed to show that the ALJ's decision that she suffered from less than marked limitations in two of the six domains is unsupported by substantial evidence or that the ALJ's decision that plaintiff's limitations in one of the six domains was not extreme was unsupported by the substantial evidence. Thus, the undersigned recommends that the ALJ's decision be affirmed.

## IV. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that the claimant is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 10, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 10, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Susan K. DeClerq, AUSA and the Commissioner of Social Security, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Latoya Zamora, 1371 Seward, Detroit, MI 48202.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov